1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

ARMIK DAVOODIANES,                )        NO. CV 11-5262-AGR
                                  )
         Plaintiff,               )
                                  )
     v.                           )
                                  )        **MEMORANDUM OPINION AND**
MICHAEL J. ASTRUE,                )        **ORDER**
Commissioner of Social Security, )
                                  )
         Defendant.               )
                                  )

     Plaintiff Armik Davoodianes filed a complaint on July 1, 2011.  (Dkt. No. 3.)
Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the
magistrate judge on July 18 and July 29, 2011.  (Dkt. Nos. 7, 9.)  On March 7,
2012, the parties filed a Joint Stipulation ("JS") that addressed the disputed
issues.  The court has taken the matter under submission without oral argument.

     Having reviewed the entire file, the court affirms the decision of the
Commissioner.

# I.

## PROCEDURAL BACKGROUND

On March 13, 2008, Davoodianes filed applications for disability insurance and supplemental security income benefits, alleging an onset date of January 15, 2005.  Administrative Record ("AR") 30, 152-61.  The applications were denied.  AR 30.  An Administrative Law Judge ("ALJ") conducted a hearing on December 17, 2009, at which Davoodianes and a vocational expert ("VE") testified.  AR 54-94.  On January 12, 2010, the ALJ issued a decision denying benefits.  AR 27-44.  On April 19, 2011, the Appeals Council denied the request for review.  AR 1-4.

# II.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this court has authority to review the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence or it is based upon the application of improper legal standards.  *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, "substantial evidence" means "more than a mere scintilla but less than a preponderance; it is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (citation and quotation marks omitted); *Moncada*, 60 F.3d at 523; *see also Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).  When determining whether substantial evidence exists to support the Commissioner's decision, the court examines the administrative record as a whole, considering adverse as well as supporting evidence.  *Drouin*, 966 F.2d at 1257.  Where the evidence is susceptible to more than one rational interpretation, the court must defer to the decision of the Commissioner.  *Moncada*, 60 F.3d at 523.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### III.

### DISCUSSION

#### A.   Disability

A person is disabled and eligible for benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003).

#### B.   The ALJ's Findings

The ALJ found that Davoodianes had the severe impairment of "grade 3 hepatitis B." AR 33. He did not have an impairment or combination of impairments that met or equaled the severity of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 34.

Davoodianes had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b)[1] and 416.967(b)[2] except that "he can only occasionally climb ladders, ropes and scaffolds and he would need to avoid concentrated exposure to extreme cold and heat." AR 35. Davoodianes could not perform any past relevant work. AR 42. However, there were a significant number of jobs in the

---

[1]Light work involves lifting no more than 20 pounds occasionally and 10 pounds frequently; and requires a good deal of walking or standing, or sitting most of the time with some pushing and pulling of arm or leg controls. 20 C.F.R. § 404.1567(b).

[2]Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time . 20 C.F.R. § 416.967(b).

3

1
2

national economy that he could perform, such as a cleaner, housekeeper and laundry worker.  AR 42-43.

3

### C.   Medical Expert To Determine Medical Equivalency

4
5

Davoodianes argues the ALJ erred in failing to utilize a medical expert to determine whether his liver condition met or equaled a listing.

6
7
8
9
10
11
12

The claimant bears the burden of demonstrating that his impairments are equivalent to a listed impairment that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.  *Bowen v. Yuckert*, 482 U.S. 137, 141, 146 n.5, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987).  "If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled."  *Id.* at 141; *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999); 20 C.F.R. §§ 404.1520(4)(iii), 416.920(4)(iii).

13
14
15
16
17
18
19
20
21
22
23
24

"For a claimant to show that h[is] impairment matches a listing, it must meet *all* of the specified medical criteria.  An impairment that manifests only some of those criteria, no matter how severely, does not qualify."  *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990) (emphasis in original).  "To *equal* a listed impairment, a claimant must establish symptoms, signs and laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment, or, if a claimant's impairment is not listed, then to the listed impairment 'most like' the claimant's impairment."  *Tackett*, 180 F.3d at 1099 (emphasis in original); 20 C.F.R. § 404.1526.  "'Medical equivalence must be based on medical findings.'  A generalized assertion of functional problems is not enough to establish disability at step three."  *Tackett*, 180 F.3d at 1100 (citation omitted).

25
26
27
28

Davoodianes makes no showing that he meets or equals a listing.  Instead, he argues the ALJ failed to use a medical expert in violation of Social Security Ruling ("SSR") 96-6p.  Specifically, Davoodianes argues the state agency medical consultant did not sign the Disability Determination and Transmittal

1  forms. AR 95-96.

2       The ALJ "is responsible for deciding the ultimate legal question whether a

3  listing is met or equaled."  SSR 96-6p, 1996 SSR LEXIS 3, *7-*8.  When an ALJ

4  determines that an individual's impairment is not equivalent to any listing, the ALJ

5  may satisfy the duty to receive expert opinion evidence into the record by

6  obtaining the signature of a State medical consultant on an SSA-831-U5, SSA-

7  832-U5 or SSA-833-U5 form, or by "[o]ther documents, including the Psychiatric

8  Review Technique Form and various other documents on which medical and

9  psychological consultants may record their findings."  *Id.* at *8-*9 (July 2, 1996).

10      The ALJ discussed the evidence which formed the basis of his finding at

11 step three of the sequential analysis.  AR 34.  The ALJ cited the opinion of the

12 state agency medical consultant[3] in Exhibit 1F and the absence of medical

13 findings in the record required for listing 5.05 (chronic liver disease) or any other

14 listed impairment.[4]  *Id.*

15      The state agency medical consultant's opinion by Dr. Chambers in Exhibit

16 1F consists of a Physical Residual Functional Capacity Assessment form dated

17 April 24, 2008, with the attached request for medical advice.  AR 415-24.  Dr.

18 Chambers found "Hx of Hep B, 2005 Labs: not listing level."  AR 416.  Dr.

19 Chambers found that Davoodianes could lift 20 pounds occasionally and 10

20 pounds frequently; sit, stand and walk for about 6 hours in an 8-hour workday;

21 and push or pull consistent with the lift/carry restriction.  *Id.*  Davoodianes could

22

23      [3] Opinions of state agency medical consultants are "treated as expert
opinion evidence of nonexamining sources."  SSR 96-6p at *1.

24      [4] *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005) (claimant "does not
25 specify which listing she believes she meets or equals" and "does not set forth
any evidence which would support the diagnosis and findings of a listed
26 impairment"; "An ALJ is not required to discuss the combined effects of a
claimant's impairments or compare them to any listing in an equivalency
27 determination, unless the claimant presents evidence in an effort to establish
equivalence.").  "It is unnecessary to require the Secretary, as a matter of law, to
28 state why a claimant failed to satisfy every different section of the listing of
impairments."  *Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir.1990).

1  only occasionally climb ladders, ropes and scaffolds, and should avoid

2  concentrated exposure to extreme cold and heat.  AR 417, 419.

3         The Physical Residual Functional Capacity form used by Dr. Chambers is

4  Form SSA-4734-BK, which is not one of the listed forms in SSR 96-6p.  However,

5  SSR 96-6p permits an ALJ to rely on "other documents," including "various other

6  documents on which medical and psychological consultants may record their

7  findings."  SSR 96-6p, 1996 SSR LEXIS 3, at *8-*9.  The Physical Residual

8  Capacity form qualifies as a form on which a medical consultant may record his

9  or her findings.

10        In reply, Davoodianes argues that Dr. Chambers "was simply trying to

11  communicate that the sole medical evidence available to him at the time of his

12  review . . . did not demonstrate a Listing-level impairment."  JS at 6.

13        SSR 96-6p requires an ALJ to obtain an updated medical opinion from a

14  medical expert "[w]hen additional medical evidence is received that in the opinion

15  of the administrative law judge . . . may change the State agency medical or

16  psychological consultant's finding that the impairment(s) is not equivalent in

17  severity to any impairment in the Listing of Impairments."  SSR 96-6p at *9-*10.

18        The ALJ found that "the record does not document medical findings that

19  are equivalent in severity and duration to the criteria of any listed impairment."

20  AR 34, 37-41; *see also* AR 41 ("laboratory studies do not show a progression of

21  disease with increased serum total bilirubin, decreased serum albumin, increased

22  INR levels or CLD scores to show end-stage liver disease"; "the records

23  document the claimant has exhibited no manifestations of chronic liver disease

24  such as jaundice, enlargement of the liver, ascites, hematemesis, hypoxemia,

25  edema or altered mental status").  This finding is supported by substantial

26  evidence, and Davoodianes does not even argue otherwise.  *See also Rivera v.*

27  *Astrue*, 2012 U.S. Dist. LEXIS 21584, at *9-*10 (E.D. Wash. Feb. 21, 2012).

28  Davoodianes has not shown the ALJ erred in failing to call a medical expert to

1   testify whether his impairment met or equaled a listing.

2   **D.   Occupational Therapist And Kinesiologist's Opinions**

3   Davoodianes argues the ALJ failed to apply the analysis required by SSR

4   06-03p to an occupational therapist's evaluation dated August 5, 2009.[5]  AR 210-

5   224.

6   The ALJ gave the evaluation "no substantial weight" because it did not

7   come from an acceptable medical source,[6] was based "in large part on the

8   claimant's subjective complaints" and was "inconsistent with the findings on

9   examinations in the treating source records."  AR 41.

10   Davoodianes does not dispute that an occupational therapist and

11   kinesiologist are not acceptable medical sources.  Such evidence may be used

12   "to show the severity of your impairment(s) and how it affects your ability to work."

13   20 C.F.R. § 404.1513(d)-(e).  However, such opinions do not receive the same

14   deference as medical source opinions.  *See Gomez v. Chater*, 74 F.3d 967,

15   970-71 (9th Cir. 1996) (opinions from "other sources" can be afforded "less

16   weight than opinions from acceptable medical sources.").  "The ALJ may discount

17   testimony from these 'other sources' if the ALJ '"gives reasons germane to each

18   witness for doing so."'"  *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012)

19   (citation omitted).

20   .   Davoodianes argues the ALJ's finding that the evaluation was based "in

21   large part" on his subjective complaints is not supported by substantial evidence.

22   The evaluation concluded Davoodianes "is unable to sustain any substantial work

23   activity at any physical demand level as defined by the Department of Labor."  AR

24

25   _____

26   [5] The evaluators were an occupational therapist and kinesiologist.  AR 210, 224.

27   [6] "Medical sources who are not 'acceptable medical sources,' [include] nurse practitioners, physician assistants, licensed clinical social workers,

28   naturopaths, chiropractors, audiologists, and therapists ...." SSR 06–03p.

1   224.  The sections on environmental restrictions, pain profile[7] and non-exertional

2   limitations[8] were based largely on subjective complaints.  AR 213-14, 221.  In

3   terms of clinical findings, Davoodianes "demonstrated normal range of motion in

4   all areas except for his neck, bilateral arms, mid-back, low back, bilateral hips and

5   bilateral legs."  AR 216.  In those areas, however, the evaluation did not indicate

6   deviations that were debilitating.  *Id.*  Manual muscle strength ranged from Grade

7   3 (defined as "fair" and indicating full range of motion against gravity) to Grade 5

8   (defined as "normal" and indicating full range of motion against maximum manual

9   resistance).  AR 216-17.  Davoodianes stated he could lift only 20 pounds.[9]  AR

10  35, 196.  In the evaluation, Davoodianes was observed to lift and carry 15 pounds

11  for 20 feet.  AR 218.  The sit, stand and walk section was based on subjective

12  complaints except for observations that Davoodianes could walk one block, stand

13  for 10-15 minutes, and sit for 30 minutes at a time.[10]  AR 219.

14       Based on McCarron Dial testing, the evaluation concluded that

15  Davoodianes was below average in fine motor coordination and gross motor

16  skills.  AR 221.  Gross motor skills mostly relates to endurance for work.  *Id.*  "An

---

18   [7]  Although the section on pain profile states it is also based on objective
observations, those observations consist largely of subjective allegations such as
19  somatic complaints, "self-depracatory," complaints of inability to perform,
unintelligible verbalization, massage and request for rest breaks.  AR 213-14.

20
     [8]  Although the section title states it is based on clinical tests, an asterisk is
21  used to denote observed times.  None of the results in this section are denoted
with an asterisk.  AR 221; *compare* AR 219.

22
     [9]  "Light work involves lifting no more than 20 pounds at a time with
23  frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the
weight lifted may be very little, a job is in this category when it requires a good
24  deal of walking or standing, or when it involves sitting most of the time with some
pushing or pulling of arm or leg controls.  To be considered capable of performing
25  a full or wide range of light work, you must have the ability to do substantially all
of these activities."  20 C.F.R. §§ 404.1567(b), 416.967(b).

26
     [10]  The push/pull limitation was based solely on the evaluators' beliefs that
27  "[pushing foot controls is an essential job function that should be avoided with
people with chronic low back pain secondary to torque that is placed on the back
28  with repetitive foot pedal use."  AR 220.

1  overall fine motor score at <1st percentile would make it very difficult to work at a
2  job where hand/arm use is an essential function.  His fine motor speed and
3  accuracy would not be consistent with assembly work."[11]  *Id.*

4      Davoodianes argues the ALJ fails to point to evidence in the record
5  inconsistent with the evaluation's clinical findings.  However, the ALJ carefully
6  reviewed the medical records for the period 2005-2009.  The ALJ cited medical
7  records indicating that, in August 2005, Davoodianes denied pain in the upper
8  and lower extremities, denied exertional symptoms, and had no decreased
9  exercise tolerance.  AR 37-38, 486.  The motor examination was 5/5 in the upper
10 and lower extremities.  AR 37-38, 487.  The ALJ also cited medical records in
11 2006 and 2007.  AR 37-38.  In October 2006, Davoodianes reported low back
12 pain and urinary pain that "comes and goes."  AR 512, 574 (mild and intermittent
13 right upper quadrant pain), 575 (6/06, mild and intermittent left upper quadrant
14 pain).  In February 2007, Davoodianes had normal strength and tone in all
15 extremities, normal range of motion, and normal walk.  AR 509.  In September
16 2007, Davoodianes had no neck pain and normal range of motion; no back pain
17 or tenderness; normal range of motion in upper and lower extremities; normal gait
18 and no focal motor deficits.  AR 571.  The ALJ cited medical records from 2008.
19 AR 38-39.  In February 2008, Davoodianes reported that he walked regularly and
20 had good exercise tolerance.[12]  AR 38, 623.  In March 2008, Davoodianes denied
21 any overt complaints.  AR 38, 621.  The physician noted that Davoodianes was
22 working on disability, "but I do not know if he would qualify for either Medicaid or
23 any kind of disability at this point in time."  AR 38, 622.  In June 2008,

24

25     [11]  None of the representative jobs identified by the VE (cleaner,
26 housekeeper and laundry worker) appear to involve assembly work.  AR 42-43.

27     [12]  Davoodianes reported that he did not get abdominal discomfort or chest
   pain while walking or exercising, but did notice that is occurred after eating spicy
28 Indian food.  AR 623.  In March 2008, Davoodianes reported that he did not fill his
   prescription because his abdominal pain subsided after his last visit.  AR 620.

1    Davoodianes reported chronic back pain that keeps him from working.  He

2    requested that the physician fill out disability paperwork, but the physician

3    declined to do so and found no pain or tenderness in the back area.  AR 38, 617-

4    18.  In October 2008, Davoodianes had no complaints, with earlier reflux

5    symptoms having resolved.  He had no myalgias, no pain with palpitation, and full

6    strength 5/5 in the upper and lower extremities.  AR 39, 611.  In March 2009,

7    Davoodianes again reported chronic back pain and requested that the physician

8    fill out disability paperwork.  The physician's examination was essentially normal.

9    AR 39, 607.  In October 2009, Davoodianes complained only of intermittent and

10   infrequent left flank pain with occasional radiation down to his left groin.  AR 39,

11   649.  That could not be elicited on examination.  AR 650.  Davoodianes was

12   "overall doing well," "in no apparent distress" and "pleasant and interactive."  AR

13   649.  He had very mild tenderness bilaterally, with no significant tenderness of his

14   paraspinous musculature and no midline L-spine tenderness.  AR 650.  His

15   neurological examination was nonfocal.  *Id.*

16        It is the ALJ's province to resolve a conflict in the medical evidence.

17   *Moncada*, 60 F.3d at 523.  The ALJ gave legitimate reasons for discounting the

18   occupational therapist's report.  *See Molina*, 674 F.3d at 1111.

19                                          **IV.**

20                                        **ORDER**

21        IT IS HEREBY ORDERED that the decision of the Commissioner is

22   affirmed.

23        IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this

24   Order and the Judgment herein on all parties or their counsel.

25

26

27   DATED: June 22, 2012

28                                    _____
                                      ALICIA G. ROSENBERG
                                      United States Magistrate Judge

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28